E-FILED
Thursday, 16 August, 2007  09:21:32 AM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| DORA L. DOYLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 05-1138 |
| v. | ) | |
| | ) | |
| MCLEAN COUNTY HEALTH | ) | |
| DEPARTMENT, | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER

Before this Court is Defendant McLean County Health Department's ("MCHD") Motion for Summary Judgment.  For the reasons set forth below, MCHD's Motion for Summary Judgment [#45]  is GRANTED.

### JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the claims asserted in the Complaint present federal questions under Title VII, 42 U.S.C. § 2000e, et seq., and 42 U.S.C. § 1981.

### FACTUAL BACKGROUND

MCHD is a local public entity located in Bloomington, Illinois, that provides various public health services to McLean County residents.  In February 2004, MCHD was accepting applications to fill an opening for a Human Services Specialist position ("position").  Plaintiff, Dora L. Doyle ("Doyle"), an African-American female, submitted her resume to be considered for the position.  She also filled out a job application while waiting for her interview.

The written job classification described the position as involving professional human service and communicable disease service work in implementing and coordinating HIV risk reduction, counseling and testing programs.  The job classification presented the work related to the position as consisting of assessing clients' needs and making referrals for medical or human services, as well as conducting HIV education, outreach, and oversight of grant related activities.

The requirements for the position, as described in the job classification, included the following: a minimum of a bachelor's degree in social work, human services, public health education or a closely related area; two to three years of experience in providing social services to clients which involved health issues; or any equivalent combination of education and experience that would provide the noted knowledge, skills and abilities.

Communicable Disease Supervisor for the MCHD, Christine Shadewaldt ("Shadewaldt"), was responsible for interviewing applicants and selecting the top applicants for the position. Shadewaldt interviewed Doyle for the position.  During each of the interviews, Shadewaldt utilized an interview checklist.  After reviewing the applications and resumes and conducting interviews, Shadewaldt narrowed the group of applicants to three top candidates: Doyle, an African-American female, Deborah Webb ("Webb"), a Caucasian female, and Erin Johnson ("Johnson"), a Caucasian female.  Shadewaldt selected Webb as the top candidate on the grounds that Webb possessed highly relevant prior experience including experience as an HIV counselor and grant writing ability.  However, after she interviewed with Division Director, Karen Mayes ("Mayes"), Webb was ultimately not hired.  According to Shadewaldt, Webb was not hired due to a lack of stability in Webb's previous employment.

2

After comparing the qualifications of the remaining two candidates, Doyle and Johnson, Shadewaldt ultimately determined that Johnson possessed stronger qualifications and selected Johnson as the top candidate.  Johnson subsequently interviewed with Mayes, who agreed that Johnson was the better qualified candidate.  Johnson was hired on March 29, 2004, at a salary of $30,048 per year. Doyle learned that she had not been selected for the position after contacting the MCHD.

Doyle filed a Charge of Discrimination with the EEOC on August 17, 2004, claiming that she had been discriminated against on the basis of her race.  The EEOC ultimately issued Doyle a right to sue letter.

On May 27, 2005, Doyle filed this suit.  She asserts two claims in her Complaint.  In Count I, Doyle alleges that she was discriminated against because of her race, since a less qualified, non-Black applicant was selected over her.  In Count II, titled "Unfair Hiring Behavior (Practice)," Doyle contends that the MCHD's practice of considering an applicant's "projected longevity in the position" has a disparate impact on African-Americans because it disproportionately disqualifies African-American applicants who, as a group, tend to have less stable work histories[1].  MCHD has now moved for summary judgment, and this Order follows.

## DISCUSSION

Summary judgment is appropriate where "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

---

[1]The substance of Claim II was clarified during Doyle's deposition.  In Doyle's Complaint, she did not mention "projected longevity," instead centering her claim on the discussion of salary that occurred during her interview with Shadewaldt, which Doyle was felt was inappropriate and unwarranted.  The parties confirmed their agreement that Claim II centers on the issue of "projected longevity" in their briefs pertaining to summary judgment.

3

of law." Fed. R. Civ. P. 56(c). The moving party may meet its burden of showing an absence of disputed material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). However, the record and all justifiable inferences drawn from it will be viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

When the moving party meets its burden, the non-moving party must show that a genuine issue of material fact does exist but "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986). The non-moving party must present "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment will be denied where a reasonable jury could find for the non-moving party. *Anderson*, 477 U.S. at 248.

*I. Race Discrimination*

MCHD argues that the discovery in this case does not support Doyle's discrimination claim and fails to create any genuine issue of material fact that MCHD discriminated against Doyle because of her race. Specifically, MCHD asserts that Doyle was not hired simply because she was not the most qualified candidate. In support of this assertion, MCHD refers to Shadewaldt's and Mayes' assessments of Johnson's and Doyle's respective qualifications, which show the following: (1) Johnson had a bachelor's degree closer to the requirements of the position; (2) Johnson had five more years of work experience than Doyle in the area of case management and education; (3) Johnson possessed a superior knowledge of community resources because she had been a resident of the county for nineteen years; (4) Johnson had experience caring for persons with HIV infection while Doyle lacked such experience; (5)

Johnson stated she had frequent experience in public speaking while Doyle stated she had more limited experience; and (6) Johnson possessed 15 years of supervisory experience while Doyle possessed none.  Furthermore, Shadewaldt and Mayes looked to the employment stability of each candidate and found that Johnson's record of employment stability was superior to Doyle's. MCHD also argues that Doyle has failed to present any evidence that its reason for not hiring her was pretextual.   Therefore,  MCHD contends it is entitled to judgment as a matter of law on Count I because it had a legitimate, non-discriminatory reason for not hiring Doyle.

Doyle argues that the evidence she has presented is sufficient to support her claims and to establish a genuine issue of material fact as to whether MCHD's stated reasons were pretextual. She points to her deposition testimony and the written discovery between the parties as support for her claim and argues that the qualifications listed in her resume show that she was the more qualified candidate.  Doyle highlights her experience as a volunteer with the McLean County AIDS Force and the American Red Cross providing HIV risk reduction counseling and testing programs.  Addressing her changes in employment, Doyle points out that because she was a military wife, she traveled around the world with her husband to different duty stations and did not leave jobs of her own volition.

Title VII provides that it is unlawful for an employer "to fail or refuse to hire . . . or otherwise discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  The goal of Title VII is to "provide an equal opportunity for *each* applicant regardless of race."  *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 719 (7th Cir. 2005) (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 579 (1978)) (emphasis in original).  To avoid summary judgment, the non-moving party must present

direct or circumstantial evidence of discriminatory motivation or must establish a prima facie

case under the *McDonnell-Douglas* burden-shifting analysis. *Rudin*, 420 F.3d at 719-720**.**

Direct evidence, "if believed by the trier of fact, will prove the particular fact in question without

reliance on inference or presumption" and reveals an "intent to discriminate." *Id* at 720.

Circumstantial evidence allows the trier of fact to infer of intentional discrimination. *Id*.

Under the McDonnell Douglas analysis, the plaintiff carries the burden of proving: (1)

that she belongs to a protected class; (2) that she was qualified for an open position for which she

applied; (3) her application was rejected; (4) the employer filled the position with someone not

of the complainant's protected class. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802

(1973); *Blise v. Antaramian*, 409 F.3d 861, 866 (7th Cir. 2005). If the plaintiff establishes a

prima facie case, the burden shifts to the employer to assert a "legitimate, non-discriminatory

reason" for not hiring the plaintiff. *McDonnell Douglas*, 411 U.S. at 802; *Blise*, 409 F.3d at 867.

If the employer sets forth such a reason, the burden shifts back to the plaintiff, who must then

demonstrate that the proffered reason is pretextual. *Blise*, 409 F.3d at 867; *Ballance v. City of

Springfield*, 424 F.3d 614, 617 (7th Cir. 2005). Pretext is "a dishonest explanation, a lie rather

than an oddity or an error." *Ballance*, 424 F.3d at 617 (quoting *Kulumani v. Blue Cross Blue

Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000)). To establish pretext, a plaintiff can show that

"a discriminatory reason more likely motivated the [defendants] or . . . that the [defendants']

proffered explanation is unworthy of credence**."** *Blise*, 409 F.3d at 867 (quoting *Texas Dep't of

Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

Pretext will be found where the plaintiff has provided concrete evidence beyond the

subjective hiring criteria that places the employer's reason for failing to hire plaintiff into doubt;

subjective hiring criteria alone will not be enough to prove pretext.  *Compare Blise*, 409 F.3d at 867-868 (evidence consisting of challenges to the interview process and relative qualifications of applicants found not sufficient to show pretext), *Ballance*, 424 F.3d at 620 ("self-supporting assertions, without factual support in the record" fail to prove pretext), *and Millbrook v. IBP, Inc.,* 280 F.3d 1169, 1176 (7th Cir. 2002) (subjective interview comments, plaintiff's qualifications for position and weak statistical evidence, failed to show subjective hiring criteria was a "mask for discrimination"), *with Thanongsinh v. Bd. of Educ.*, 462 F.3d 762, 780-781 (7th Cir. 2006) (evidence including blatant inequality in employer's scoring of plaintiff's aptitude test when compared with scoring of non-minority applicant found sufficient to establish pretext), *and Bell v. EPA*, 232 F.3d 546, 551-552 (7th Cir. 2000) (memorandum indicating that employer did not hire the most qualified candidate established pretext).

Furthermore, this Court will not sit as a "superpersonnel department."  *Blise*, 409 F.3d at 867.  Even if the employer's decision could be deemed "mistaken, ill considered or foolish," as long as the employer genuinely believed its reason for not hiring plaintiff, the reason will not be considered pretextual.  *Blise*, 409 F.3d at 867-868.  *See also Barricks v. Eli Lilly & Co.*, 481 F.3d 556, 560 (7th Cir. 2007) ("The focus of a pretext inquiry is whether the employer's reason is honest, not whether it is accurate or wise."); *Johal v. Little Lady Foods*, 434 F.3d 943, 946-947 (7th Cir. 2006) ("It is not our role to question the wisdom of a company's decisions on how to run its business, only to assure that such decisions are not intended to provide cover for illegal discrimination.").  If a plaintiff attempts to prove pretext by showing that her qualifications are superior to the qualifications of other applicants, the qualifications must be so superior that no reasonable person would have chosen the selected candidate over the plaintiff.  *See Millbrook*,

280 F.3d at 1180-1181.

Although Doyle has not provided any direct or circumstantial evidence of race discrimination, she argues that she has established a prima facie case of race discrimination under the McDonnell Douglas analysis.  This Court agrees.  Doyle has shown: (1) that she is a member of a protected class; (2) she was qualified for the open position of Human Services Specialist for which she did apply; (3) her application was rejected; and (4) MCHD filled the position with someone not of Doyle's protected class.

That being said, MCHD has also met its burden to provide a legitimate, non-discriminatory reason for not hiring Doyle by asserting that it believed Doyle was not the most qualified candidate.  In support of the legitimacy of this reason, Shadewaldt states in her affidavit that the department was concerned about stability in previous employment because of the significant amount of training required for the position and that this factor was a substantial reason why Doyle was considered the less qualified candidate.  Shadewaldt's affidavit illustrates the importance that MCHD assigned to this factor by describing the hiring decision regarding Webb, who Shadewaldt had originally selected as the top candidate and who was ultimately not hired due to a lack of stability in her employment history. In addition, Shadewaldt's affidavit lists the following areas in which she found Johnson's qualifications to be superior to Doyle's qualifications: (1) Johnson's Bachelor's degree in Sociology more closely matches the requirements of the position than Doyle's degree in Criminology; (2) Johnson has five more years of experience in case management and education; (3) Johnson has a more stable employment history since she was employed for 19 years with her previous employer while Doyle was employed for three years with her previous employer, and Doyle's length of

8

employment in her prior jobs was between one and two years; (4) Johnson has a superior knowledge of community resources because she has been a resident of McLean County for nineteen years while Doyle has been a resident for only five years; (5) Johnson possesses fifteen years of supervisory experience while Doyle has no supervisory experience; (6) Johnson has cared for individuals with HIV infection while Doyle lacks such experience; and (7) Johnson reported that she has had frequent experience with public speaking while Doyle reported that she has performed public speaking a couple of times.

Therefore, the burden shifts back to Doyle to show that MCHD's proffered reason is actually pretext for discrimination. In an effort to meet this burden, Doyle references her qualifications and argues that they are superior to those of Johnson. Doyle argues that through her experience as a volunteer for the McLean County AIDS Task Force and the American Red Cross, she gained a substantial amount of training related to the position with MCHD and developed relationships within the McLean County community. Doyle states that she possesses strong public speaking skills, as she has been a guest speaker at events sponsored by several community groups. In mitigation of the multiple job changes that constitute her employment history, she states the she was forced to change jobs because she was a military wife and moved around the world with her husband as he changed duty stations. Doyle also states that, although MCHD discusses supervisory experience as one of the qualifications considered in making its hiring decision, the job classification identified the position as non-supervisory. Additionally, Doyle asserts that although her bachelor's degree is not related to social work or human services, her substantial work experience has given her more than a sufficient knowledge of the principles and practices of social work. Based on her qualifications, Doyle argues that she has met, if not

exceeded, the requirements for the position and should rightly have stood out as the top candidate.

When construed in the light most favorable to her, Doyle's credentials qualified her for the position. Doyle's suitability for the position is exemplified by the fact that she was in fact selected as one of the top three candidates for the position. However, Doyle's subjective opinion that she deserved to be evaluated more highly based on her perception of her qualifications is not sufficient to establish a genuine issue of material fact. A plaintiff's speculative allegations regarding her abilities with respect to a particular position "are insufficient to contradict [the] employer's negative assessment of that ability." *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 740 (7th Cir. 2006) (quoting *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 985 (7th Cir. 1999)) (internal citation omitted). Though she has described strong qualifications, Doyle has failed to demonstrate that they are so superior that no rational person would choose another candidate over her. Based on the subjective hiring criteria, MCHD could reasonably have chosen Johnson over Doyle. Furthermore, though Doyle makes a non-frivolous argument that MCHD may not have made the wisest or most accurate decision, the record is devoid of any indication that MCHD's proffered reason for not hiring her is untruthful or entirely unfounded. Therefore, Doyle's qualifications for the position fail to provide evidence of pretext.

Doyle also argues that the interview itself provides evidence of pretext. Essentially, she alleges that events that transpired during the interview cast MCHD's reason for not hiring her into doubt and evoke a presumption of dishonesty regarding MCHD's intentions. Doyle contends that she felt uncomfortable during the interview largely because Shadewaldt began by inquiring about the salary that Doyle was seeking. Doyle states that she told Shadewaldt that

10

salary was negotiable and asked Shadewaldt to proceed with the interview and discuss salary at

the end.  According to Doyle, Shadewaldt stated that she was unable to offer more than twenty-

six or twenty-seven thousand dollars per year and was reluctant to continue the interview if

Doyle was seeking more than that amount.  Doyle states that Shadewaldt ultimately did continue

with the interview upon Doyle's repeated requests, and Doyle did eventually tell Shadewaldt that

she was seeking a salary of no less than thirty thousand dollars per year.  Doyle also contends

that Shadewaldt told her that she would be notified as to whether or not she had been selected for

an interview within two weeks but was never contacted.[2]  Doyle stated that she called

Shadewaldt herself two weeks after the interview to inquire about the status of the position, and

Shadewaldt told her that if she had not received a letter from MCHD, she was not selected for

the position.  Doyle also points out that both of the Caucasian candidates received second

interviews with Mayes, the Director for Personal health, while she did not.

Although the interview may have been conducted in an unconventional manner in

Doyle's view, nothing in the record regarding the interview or the exchanges that occurred

during the interview indicates that MCHD's reason for not hiring Doyle was a lie.  Doyle is

essentially arguing that the interview evidences an underlying discriminatory motive because it

did not proceed in a manner that she felt it should have proceeded.  At best she has shown a

reluctance to hire her based on her salary requirements, which is not a protected category.  It is

not the function of this Court to judge the quality or correctness of an employer's interview

procedures.  Doyle's subjective discomfort with the interview process simply does not provide

---

[2] Shadewaldt states in her affidavit that she told Doyle that she would be notified within a "few" weeks whether or not she was selected.  Shadewaldt further notes that she did not tell Doyle that all three top candidates would receive second interviews.

evidence of a discriminatory motive behind MCHD's hiring decision or establish that her interview was conducted differently from other interviews on account of discriminatory bias.

Furthermore, the court notes that Doyle provides no evidence regarding how the other two candidates' interviews were conducted and makes no attempt to establish that those interviews proceeded differently from hers. The record shows that all three candidates were evaluated according to the same 12 factors, listed on a printed "Interview Guide." All three candidates were also asked the same interview questions from a standardized list which Shadewaldt filled out as she evaluated each candidate. There is no indication that Doyle was evaluated or scored differently than the other candidates or that the substantive content of her interview differed substantially from the other two candidates' interviews. Therefore, Doyle's description of how her interview proceeded and her discomfort with the process fails to provide any basis for this Court to find or even reasonably infer that MCHD did not honestly believe the reason it gave for not hiring Doyle.

Doyle also contends that the disparity regarding the starting salary for the position constitutes an inconsistency that provides a basis upon which to question MCHD's honesty. Doyle asserts that during the interview, Shadewaldt stated that she could only offer Doyle twenty-six to twenty-seven thousand dollars per year. However, Doyle states in her deposition testimony that she spoke with Webb later and discovered that Webb had been offered thirty-two thousand dollars per year as a starting salary. Doyle also points out in her affidavit that Johnson was offered thirty thousand dollars per year. Doyle further asserts that she called the HR department at MCHD and was told that she would be offered a salary above the minimum salary for the position if she was entering the position with experience. Therefore, Doyle contends that

12

the low starting salary presented to her during her interview was untruthful and evidences a discriminatory motive behind MCHD's hiring decision.

While the difference between the salary range presented to Doyle and the actual salaries offered to Webb and Johnson does present an inconsistency regarding MCHD's treatment of Doyle as a candidate, this inconsistency is not sufficient to establish that MCHD's hiring decision was pretextual.  At most, this disparity pertaining to starting salary constitutes conjecture that Shadewaldt's representation of the starting salary to Doyle during the interview was not truthful.  Doyle urges the Court to take the further leap necessary to infer that the reason MCHD asserted for not hiring Doyle was also untruthful.  However, this leap is based solely on Doyle's subjective expectation that she would be entering the position at an experienced level and should be offered a salary above the minimum for that position.  Notably absent from the record is any indication as to MCHD's assessment of her level of experience or other evidence indicating that Shadewaldt knew that Doyle was deserving of a higher salary based on her experience.  Nor has Doyle introduced evidence establishing that Shadewaldt was the one making the salary determinations.  As previously stated, subjective opinions are not sufficient to establish evidence of pretext.  Like her subjective assessment of her qualifications and the manner in which the interview was conducted, the salary discrepancy also fails to cast the honesty of MCHD's reason for not hiring her into doubt.  Therefore, this Court finds that Doyle's allegations that MCHD improperly offered her a lower salary than the two Caucasian candidates constitutes no more than a suspicion of untruth that falls short of establishing a genuine issue of material fact.

13

While Doyle has presented evidence indicating that MCHD's hiring decision may not have been the wisest or best decision and that Shadewaldt's interview methods may have been uncommon and even disconcerting, the evidence is not sufficient to show that MCHD's reason for not hiring her was not truthful or that MCHD was more likely motivated by discriminatory animus. Therefore, Doyle has failed to establish that MCHD's reason for failing to hire her was pretextual, and therefore she has failed to establish a genuine issue of material fact with respect to Count I.

Parenthetically, the Court notes that, in her Response to MCHD's Motion for Summary Judgment, Doyle refers to other evidence that might support her allegations and substantiate the genuine issue of material fact that she claims exists. However, as the Seventh Circuit has stated, summary judgment is the point at which a party must "put up or shut up." *Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1111 (7th Cir. 2004) (quoting *Johnson v. Cambridge Indus., Inc*., 325 F.3d 892, 901 (7th Cir. 2003)). At summary judgment, a party must present the evidence it has gathered that would convince a trier of fact to accept that party's version of the facts. *Id.* At this point in the suit, discovery has been closed for seven months, and Doyle made no request for extension of that deadline. She should already be in possession of sufficient evidence to establish a genuine issue of material fact if such evidence exists. Bald references to the possible existence of other evidence are unavailing.

## II.  Unfair Hiring Practices

MCHD contends that Doyle has failed to establish a genuine issue of material fact with respect to her unfair hiring practices claim. MCHD first argues that Doyle should not be allowed to bring the claim at all because she did not state the claim in her EEOC complaint, and, because

14

it is not like or reasonably related to the claim made in the EEOC complaint, the claim cannot be raised for the first time in this Court. MCHD further argues that even if Doyle is allowed to bring the claim, she cannot establish a prima facie case because she has failed to present adequate statistical evidence in support of her claim, and she has not submitted any expert disclosures regarding her potential expert witness. MCHD also asserts that because of the large amount of training necessary for the position, it had a legitimate business justification for considering past employment stability when making its hiring decision. MCHD substantiates this business justification by referring to the fact that Webb, a Caucasian, was also not selected because of their assessment that she lacked past employment stability.

Doyle responds that she has established a genuine issue of material fact with respect to Count II. She contends that she did articulate the unfair hiring practices claim in her EEOC charge to the best of her ability and that the claim can be translated from the EEOC charge, the parties named and the nature of her interview. She argues that the statement "I was notified on March 1, 2004 that I was not selected. A less qualified, non-Black candidate was selected for the position" clearly states an unfair hiring practices claim. Doyle also argues that if this Court finds that the claim was not included in the EEOC charge, it is sufficiently like or reasonably related to the EEOC charge to be brought for the first time in this Court, as the unfair hiring practices claim does describe the same conduct and implicates the same individuals. Doyle further argues that she has established a prima facie case because she has presented statistical evidence indicating that "projected longevity" and the overall racist character of MCHD has a disparate impact on African-Americans. She specifically refers to the fact that MCHD failed to hire any African-Americans in the department during 2004. Doyle also cites the fact that she was not

15

given an opportunity to explain her lack of previous employment stability by discussing her obligation to travel with her military spouse as evidence of pretext.

Generally, a Title VII plaintiff cannot bring claims in a civil law suit that were not previously raised in her EEOC charge. *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (citing *Alexander v. Garner-Denver Co.*, 415 U.S. 36, 47 (1974)). This rule allows the EEOC and the employer an opportunity to settle the dispute and provides the employer warning about the conduct that was found to be objectionable. *Cheek,* 31 F.3d at 500; *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). However, since the EEOC charge does not need to contain every fact supporting the plaintiff's claims, a Title VII claim asserted in a complaint is allowable provided it is "like or reasonably related to the allegations of the charge." *Cheek,* 31 F.3d at 500 (quoting *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc*., 538 F.2d 164, 167 (7th Cir. 1976)). Therefore, a claim that was not overtly included in the EEOC charge is permissible in a subsequent law suit provided "there is a reasonable relationship between the allegations in the charge and the claims in the complaint, and the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Cheek,* 31 F.3d at 500. The complaint and the EEOC charge must describe the same conduct and implicate the same individuals. *Id* at 501.

Doyle's EEOC charge states:

> I applied for a job with Respondent. I was notified on March 1, 2004 that I was not selected. A less qualified, non-Black candidate was selected for the position. I believe I have been discriminated against because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended.

On its face, this charge does not contain any claim regarding unfair hiring practices. Therefore, this Court must determine whether Doyle's unfair hiring practices claim is "like or reasonably

16

related to" her EEOC charge.

While both appear to implicate the MCHD, Doyle's unfair hiring practices claim is not

related to her EEOC charge because it fails to describe the same conduct.  Doyle's EEOC charge

gave no indication that she would also charge MCHD with unfair hiring practices and did not

suggest any broader practice of discrimination extending beyond the hiring decision with respect

to her.  She described her charge in narrow terms, restricting it to racial discrimination against

her as an individual and in this single decision. She failed to mention anything about "projected

longevity," racial discrimination beyond her individual decision or about MCHD's hiring

practices in general.  Furthermore, Doyle "must at least have described, with some degree of

specificity, the conduct she considered discriminatory."  *Cheek,* 31 F.3d at 502.  However, she

failed to provide any such description. Doyle merely stated that she felt discriminated against

because a less qualified non-Black was hired over her.  This statement is far too narrow to

implicate broader discriminatory hiring practices. Additionally, in her deposition testimony,

Doyle admitted that when she filed her EEOC charge, she was only concerned about racial

discrimination against her and did not consider unfair hiring practices as part of her charge.

Therefore, Doyle's EEOC charge is not specific enough in its description of discriminatory

conduct or broad enough in scope to create an expectation that an EEOC investigation regarding

MCHD's hiring practices would grow out of the charge.

Doyle argues that this Court should consider two letters that she wrote to the EEOC in

support of her unfair hiring practices claim.  However, the letters cannot expand the scope of her

EEOC charge; they can only "clarify or amplify" the charge.  *Cheek,* 31 F.3d at 503.  The first

letter, sent to the EEOC around October 27, 2004, does use the phrase "hiring practices" in the

17

first line, which reads, "I am responding to evidence received from respondent that I charged with discrimination in hiring practices."   However, the only mention of hiring practices arises in her use of those words in the first line.  In the rest of the letter, Doyle discusses her experience during her interview with Shadewaldt, and she provides detailed explanations regarding her work history, volunteer experience and knowledge of community resources.  Nowhere in the letter does Doyle discuss conduct that could be characterized as unfair hiring practices on the part of MCHD, and she does not mention how the reasons for MCHD's failure to hire her might have a disparate impact on African-Americans.  The second letter, dated November 3, 2004, only discusses facts pertaining to MCHD's failure to hire her.  She states that she was the only finalist not to receive a second interview and discusses the disparity regarding salary.  Doyle fails to mention unfair hiring practices or disparate impact in this letter as well.  Therefore, these letters to fail to sufficiently elaborate Doyle's EEOC charge to establish any basis for Doyle's unfair hiring practices claim.

This case is distinctly similar to *Hamilton v. Summers*, in which Hamilton, a black male, filed a complaint with the Department of Treasury in which he claimed that he had been denied employment on the basis of his race.  95 F. Supp. 2d 908, 909-910 (N.D. Ill. 2000).  He later filed a claim in the District Court claiming that the Customs Service engaged in discriminatory hiring practices.  *Id* at 910.  The court held that because Hamilton's original Department of Treasury complaint related only to discrimination against Hamilton, his subsequent claim asserting a pattern and practice of discrimination was not reasonably related to his original charge and was barred.  *Id* at 912-913.  This rationale is directly applicable to the instant case.  Because her original EEOC charge related only to discrimination against her, and because she

18

has not asserted any equitable defenses for failing to assert any claim of unfair hiring practices in her EEOC charge, Doyle's subsequent claim asserting unfair hiring practices is not reasonably related to her EEOC charge and is therefore barred.

Therefore, because Doyle's EEOC charge provides no claim of widespread unfair hiring practices by MCHD, and in fact provides no indication that any such claim would arise out of her original EEOC charge, Doyle is barred from bringing her claim of unfair hiring practices in this Court.  Accordingly, this Court dismisses Count II of Doyle's complaint.

## CONCLUSION

For the reasons stated above, the Court finds that no reasonable jury could find in favor of Doyle on the record now before the Court.  Accordingly, MCHD's Motion for Summary Judgment [#45] is GRANTED, and this matter is now TERMINATED.

ENTERED this 15th day of August, 2007.


s/ Michael M. Mihm
Michael M. Mihm
United States District Judge